**The below described is SIGNED.**



Dated: March 13, 2015

*/s/ J T Marker*

**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>CAISSON LABORATORIES, INC.,<br><br>                       Debtor. | Bankruptcy Case No. 14-31344<br><br>Chapter 11 |

**MEMORANDUM DECISION**

---

"It is one thing to prevent expiration, and quite another to attempt
to breathe life back into something which has already died."[1]

       The Debtor in this chapter 11 case has operated its business in leased premises for around nine years, and the Debtor now asks this Court to allow assumption of its commercial lease. But the lessor objects to the assumption and requests stay relief along with a determination that there is no viable lease for the Debtor to assume. For the reasons set forth herein based on the Court's review of the papers, evidence, arguments, and applicable case law, the Court holds that the lease terminated before the petition date—irreversibly so—and accordingly that there is no unexpired lease for the Debtor to assume.[2]

---

[1] *Trigg v. U.S. Dep't of the Interior (In re Trigg)*, 630 F.2d 1370, 1372 (10th Cir. 1980).
[2] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). Any of the findings of fact herein are deemed to be conclusions

## I. FACTS

Tri-Park Partnership leases certain real property in North Logan, Utah that is owned by Utah State University. In turn, Tri-Park subleased that property to the Debtor under the terms of a Building Lease executed on or about March 31, 2006.[3] The Building Lease requires the Debtor to pay rent in the form of annual installments of 2,500 shares of the Debtor's stock.[4] If any rent installment is not paid on time or in full, "upon ninety (90) days written notice to [the Debtor], it shall be lawful to [Tri-Park], without notice or legal process, to re-enter and take possession of said demised premises and every part thereof . . . ."[5] And any "alterations and improvements" to the premises become Tri-Park's property "at the expiration or termination" of the lease.[6]

By letter dated April 28, 2011, Tri-Park declared the Debtor's default under the Building Lease for, among other things, failing to make timely rent payments for each year since the lease's execution.[7] The Debtor did not vacate the premises, and Tri-Park ultimately filed a Complaint for Declaratory Judgment and Damages in Utah's First District Court on September 21, 2011 alleging six counts, including breach of contract and quiet title.[8] Years of litigation ensued, resulting in the First District Court issuing at least four Memorandum Decisions between

---

of law, to the extent appropriate, and similarly, any conclusions of law herein are deemed to be findings of fact, and they shall be equally binding as both.
[3] Exhibit A to Tri-Park's Motion for Summary Judgment (docket #55). There are references in other documents to April 5, 2006 as the date of execution, but for present purposes the exact date is immaterial.
[4] Building Lease ¶ 1.
[5] *Id.* ¶ 15.
[6] *Id.* ¶ 6.
[7] Exhibit D to Declaration of Ross Farmer (docket #67). According to page 6 of the Utah First District Court's October 17, 2014 Memorandum Decision, Tri-Park also sent the Debtor a prior letter dated January 11, 2011 "informing [the Debtor that] it needed to vacate the property," but that letter has not been provided to this Court.
[8] Exhibit B to Tri-Park's Motion for Summary Judgment (docket #55).

September 2013 and October 2014 alone.[9]  In the February 2014 Memorandum Decision granting Tri-Park's motion for summary judgment on the breach of contract and quiet title counts, the First District Court found that the Debtor had breached the Building Lease by failing to make timely payments of the 2006-10 stock certificates.

Based on the February 2014 Memorandum Decision, the First District Court entered an Order Granting Partial Summary Judgment on May 9, 2014 finding breach of the lease and "quieting title in favor of [Tri-Park] and against [the Debtor].  Accordingly, [Tri-Park] is hereby granted judgment to re-enter and take possession of the subject premises and every part thereof which is subject to the Building Lease."[10]  But that same day, the Court entered a Memorandum Decision staying its Order pending the resolution of the Debtor's argument that Tri-Park waived both its right to claim a breach for untimely rent payments and its right to self-help repossession.[11]  The Court resolved that final issue in Tri-Park's favor in its October 17, 2014 Memorandum Decision,[12] and lifted its prior stay, and the Debtor filed its bankruptcy petition one week later.

In this bankruptcy case, Tri-Park filed a Motion for Relief from Automatic Stay on December 17, 2014 requesting stay relief to continue its efforts to remove the Debtor from the property.  Two days later, the Debtor filed a Motion to Assume Unexpired Lease requesting authorization to assume the Building Lease under § 365 of the Bankruptcy Code.  Given their connection, these two contested matters were set for a combined evidentiary hearing on March

---

[9] These Memorandum Decisions were issued in September 2013, February 2014, May 2014, and October 2014.  This Court has been provided all but the first of those decisions as Exhibit C to Tri-Park's Motion for Summary Judgment (docket #55), Exhibit D to Tri-Park's Motion for Relief from Automatic Stay (docket #33), and Exhibit A to Tri-Park's Reply Memorandum in Support of Petitioner's Motion for Summary Judgment (docket #71), respectively.
[10] Exhibit D to Tri-Park's Motion for Summary Judgment (docket #55).
[11] Exhibit D to Tri-Park's Motion for Relief from Automatic Stay (docket #33).
[12] Exhibit A to Tri-Park's Reply Memorandum in Support of Petitioner's Motion for Summary Judgment (docket #71).

10, 2015. But in the interim, Tri-Park filed a Motion for Summary Judgment and for Protective Order. At a continued status conference on February 9, the Court stayed any further discovery regarding the Building Lease, struck the combined evidentiary hearing set for March 10, and replaced it with a hearing on Tri-Park's Motion for Summary Judgment, which is the matter now before the Court.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(a), the Court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the [contested matter] under the governing law will properly preclude the entry of summary judgment."[13] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[14] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[15]

The moving party bears the burden to show that it is entitled to summary judgment,[16] including the burden to properly support its summary judgment motion as required by Rule 56(c) and Local Rule 7056-1.[17] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[18] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[14] *Id.*
[15] *Id.* at 249.
[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[17] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[18] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

"specific facts showing that there is a genuine issue for trial."[19] When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party.[20]

The crux of the present dispute involves § 365(c)(3) of the Bankruptcy Code, which provides that a debtor cannot assume any unexpired lease "if such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." The parties do not dispute the obvious point that the Building Lease is a commercial lease, so the only issue is whether the Building Lease was "terminated" before the petition date. If it was, then the Building Lease did not become part of the bankruptcy estate, and there is nothing for the Debtor to assume.

It is clear that unless some federal interest requires a different result, "[p]roperty interests are created and defined by state law."[21] It is equally clear that "[t]he general equitable powers of the bankruptcy court cannot create for the debtors a right to property they have lost through an incurable default."[22] But the termination of a lease, and thus the debtor's loss of any property rights under that lease, "must be complete and not subject to reversal, either under the terms of the contract or under state law."[23]

Here, the First District Court has done all of the heavy lifting during three years of prepetition litigation about the Building Lease. The Court found that the Debtor breached the Building Lease by failing to make five years of stock payments; that neither the Building Lease

---

[19] *Celotex*, 477 U.S. at 324.
[20] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988).
[21] *Butner v. U.S.*, 440 U.S. 48, 55 (1979); *see also C.O.P. Coal Dev. Co. v. Rushton (In re C.W. Mining Co.)*, 422 B.R. 746, 757 n.42 (10th Cir. BAP 2010) ("Bankruptcy courts generally look to state law to determine whether and when a lease terminates."); *Super Nova 330 LLC v. Gazes*, 693 F.3d 138, 142 (2d Cir. 2012) ("[B]ecause property interests are created and defined by state law, we should look to state law to determine a debtor's interests, including leasehold interests, in the bankruptcy estate.").
[22] *Trigg*, 630 F.2d at 1375.
[23] *C.W. Mining*, 422 B.R. at 755 (quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212 (7th Cir. 1984)).

nor any actions by Tri-Park gave the Debtor any right to cure the delinquent payments; that the Debtor's belated and ongoing transmission of stock certificates to Tri-Park did not preserve the Building Lease; that Tri-Park had always sought repossession of the property; and, at least implicitly, that quiet title was an appropriate cause of action under the circumstances. As such, the Court entered judgment quieting title in favor of Tri-Park, allowing Tri-Park "to re-enter and take possession of the subject premises and every part thereof which is subject to the Building Lease," and ultimately lifting the stay of its judgment after ruling against the Debtor on the waiver issue.[24]

In the face of all these findings and conclusions as well as the quiet title judgment, and citing *Cache County v. Beus*, 978 P.2d 1043 (Utah Ct. App. 1999), the Debtor's main argument is that the only valid methods for terminating a lease under Utah law are through an action for unlawful detainer under U.C.A. § 78B-6-801 *et seq.* or an action for common law ejectment. And since Tri-Park instead prosecuted a quiet title action under U.C.A. § 78B-6-1301, its efforts were all for naught. But while *Beus* does recognize the continued availability of an action for common law ejectment in addition to the statutory action for unlawful detainer, it does not prohibit the possibility of other remedies, and this Court is aware of no statute, case, or other Utah law that precludes a landlord's admittedly unusual use of a quiet title action under U.C.A. § 78B-6-1301 as a means of terminating a lessee's leasehold interest.[25] In fact, the slower but broader quiet title action may have even been preferable to resolve this dispute given the parties'

---

[24] It is immaterial that the First District Court did not get a chance to perform the ministerial act of entering an order implementing its October 17, 2014 ruling lifting the stay of its prior judgment before the Debtor filed for bankruptcy. The Court's findings, conclusions, and prior judgment were already in place. Were it necessary, however, this Court would lift the automatic stay for "cause" under § 362(d)(1) based on the factors described in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) to allow for entry of such an order.

[25] Contrast *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 232 P.3d 999, 1006 (Utah 2010) (holding that "[t]he unlawful detainer statute is not the appropriate vehicle for litigating disputes over non-possessory interests in property such as disputes over the scope of a license or an easement agreement").

apparent original intent to effect a sale of the property rather than a lease.[26] Moreover, the Debtor never raised this argument during three years of litigation in the First District Court, instead waiting until the state court determined everything except damages before filing for bankruptcy and raising the argument here. It is simply too late to try that gambit now.[27]

The Debtor also makes the interesting and related arguments that because the First District Court's May 9, 2014 Order Granting Partial Summary Judgment was not a final judgment of the entire action on the merits, the Order and the various Memorandum Decisions could be revised at any time, and this Court cannot give preclusive effect to those rulings. It is true that Utah Rule of Civil Procedure 54(b), like Federal Rule of Civil Procedure 54(b), allows for "entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination by the court that there is no just reason for delay and upon an express direction for the entry of judgment." It is true that nothing in the record demonstrates that the First District Court made any such determination as to the Order Granting Partial Summary Judgment. And it is true that a final judgment on the merits is one of the required elements before this Court may invoke either claim preclusion (res judicata) or issue preclusion (collateral estoppel).[28]

But under these circumstances, the *Rooker-Feldman* doctrine accomplishes what the preclusion doctrines cannot. *Rooker-Feldman* prevents lower federal courts from reviewing

---

[26] *See* Agreement in Principle attached as Exhibit A to the Declaration of Ross Farmer (docket #67).
[27] The same is true of the Debtor's argument that it "substantially complied" with the Building Lease such that equity should not sanction a forfeiture of the lease, which the Debtor never raised—at least not couched in those terms—during the state court litigation. And in any event, the First District Court did consider and reject many of the issues now raised by the Debtor in support of a "substantial compliance" argument, including the irrelevance of the stock certificate delivery because Tri-Park already effectively owned all 55,000 shares, and the subsequent and ongoing delivery of stock certificates to Tri-Park as ultimately providing Tri-Park with the benefit of its bargain.
[28] *See, e.g.*, *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 6-7 (Utah 2003) (declining to apply issue preclusion based on the Wyoming federal district court's non-final grant of partial summary judgment).

7

"cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[29] And in the Tenth Circuit, *Rooker-Feldman* is "broader than claim and issue preclusion because it does not depend on a final judgment on the merits . . . . Thus, under [Tenth Circuit] law, the *Rooker-Feldman* doctrine mirrors claim and issue preclusion, except that *Rooker-Feldman* applies to temporary and non-final orders."[30] As such, this Court is not permitted to review or otherwise revisit the First District Court's Order Granting Partial Summary Judgment or the findings and conclusions that support the judgment.[31]

The Debtor's final argument in its Memorandum in Opposition to Tri-Park Partnership's Motion for Summary Judgment and for Protective Order is that this Court should consider "other relevant case law" that may support the Debtor's ability to assume the Building lease, citing specifically to *In re C.W. Mining Company*, 422 B.R. 746 (10th Cir. BAP 2010) and *In re Pomodoro Restaurant*, 251 B.R. 441 (10th Cir. BAP 1999) (table). But neither of these cases is on point for the propositions that the Debtor suggests. The lease in *C.W. Mining*, unlike the lease here, did not provide for automatic termination—a fact which the *C.W. Mining* court itself noted when contrasting that lease with the leases at issue in cases such as *In re Trigg*, 630 F.2d 1370 (10th Cir. 1980) and *Moody v. Amoco Oil Company*, 734 F.2d 1200 (7th Cir. 1984). And in

---

[29] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).
[30] *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004) (citing *Kenmen Eng. v. City of Union*, 314 F.3d 468, 474 (10th Cir. 2002), *abrogated on other grounds by Exxon Mobil*, 544 U.S. 280 (2005)); *see also* Dustin E. Buehler, *Jurisdiction, Abstention, and Finality: Articulating a Unique Role for the* Rooker-Feldman *Doctrine*, 42 SETON HALL L. REV. 553 (2012) (discussing the contours of *Rooker-Feldman*, *Younger* abstention, and claim/issue preclusion after the Supreme Court's ruling in *Exxon Mobil*).
[31] This approach may leave open the question of whether this Court should independently consider the Debtor's waiver argument since the First District Court only entered its October 17, 2014 Memorandum Decision, but not a separate order, before the Debtor filed for bankruptcy. To the extent it were necessary, this Court would lift the automatic stay as discussed in footnote 24 to allow the First District Court to enter such an order.

*Pomodoro Restaurant*, there was an appealed declaratory judgment but also a pending unlawful detainer action on the petition date, as opposed to the prepetition entry of the quiet title judgment in this case, and the strict time limitations for assumption of commercial leases did not get added to § 365(d)(4) of the Bankruptcy Code until enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

### III. CONCLUSION

"[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less."[32] While this Court certainly understands the axiom that the law abhors a forfeiture, that is what the parties contracted for, and fought over for years, before the Debtor lost. "Courts will not[—and indeed, cannot—]revive a terminated lease simply because of the lease's importance to the reorganization efforts."[33] And for the reasons set forth above, this Court concludes that the Building Lease between the Debtor and Tri-Park had been irreversibly terminated before the petition date. As such, under § 365(c)(3) of the Bankruptcy Code, there is nothing for the Debtor to assume. Tri-Park's Motion for Summary Judgment to declare that the Building Lease is not assumable is accordingly GRANTED, as is Tri-Park's Motion for Relief from Automatic Stay to allow Tri-Park to take any appropriate action to remove the Debtor from the premises in accordance with the proceedings in the First District Court. Because insufficient cause has been shown, this Court will not waive the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3). Tri-Park is directed to prepare an appropriate order in accordance with this Memorandum Decision.

---------------------------------------------END OF DOCUMENT-------------------------------------------

---

[32] *Moody*, 734 F.2d at 1213.
[33] *In re Mako, Inc.*, 102 B.R. 814, 818 (Bankr. E.D. Okla. 1988).

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

M. Darin Hammond
Smith Knowles, P.C.
2225 Washington Blvd.
Suite 200
Ogden, UT  84401
    *Counsel for Debtor*

James C. Jenkins
Olson & Hoggan, P.C.
130 South Main, Suite 200
P.O. Box 525
Logan, UT  84323-0525
    *Counsel for Tri-Park Partnership*

Peter J. Kuhn
U.S. Trustee's Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT  84111
    *Counsel for U.S. Trustee*